UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-cv-61270-ALTMAN/Hunt

**NAEH MEDIA GROUP LLC,** *et al.*,

    *Plaintiffs*,

v.

**CITY OF LAUDERHILL, FLORIDA**,

    *Defendant.*

_____/

## ORDER

Our Plaintiffs, TK Enterprises and NAEH Media, operated their businesses in the City of Lauderhill (our Defendant). In 2021, the City shuttered TK Enterprises and NAEH Media (a catering company and a news publication, respectively) because, according to the City, the businesses had failed to secure the necessary certificates of use and business tax receipts. The problem, as we'll see, is that the City only gave the Plaintiffs 24-hours' notice before shutting them down when the relevant ordinances required *at least* 10-days' notice. So, the Plaintiffs sued the City, alleging violations of their procedural due-process rights under *both* the federal (Count I) and Florida (Count II) constitutions.

In a nutshell, the Plaintiffs allege that the City deprived them of a property interest, provided them insufficient notice, failed to afford them a pre-deprivation hearing, and neglected to tell them that they were entitled to a post-deprivation appeal. The parties have now filed their cross-motions for summary judgment, which we here resolve.[1] As we explain in more detail below, we conclude that

---

[1] "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (cleaned up). In adjudicating cross-motions, we consider each motion separately and, of course, resolve all reasonable inferences against the movant. *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005).

the Plaintiffs failed to plead a viable *Monell* claim—which they, of course, had to do for us to hold the City liable under § 1983. We thus **GRANT** the City's Motion for Summary Judgment ("City's MSJ") [ECF No. 57] as to Count I. With the only federal claim now gone, we also decline to retain supplemental jurisdiction over the remaining state-law claim (Count II). *See* 28 U.S.C. § 1367(c). We therefore **DISMISS** Count II and, in view of these rulings, **DENY** the Plaintiffs' Motion for Summary Judgment ("Pltfs.' MSJ") [ECF No. 59].[2]

---

[2] Both motions are fully briefed and ripe for adjudication. *See* the City's Response to the Plaintiffs' Motion for Summary Judgment ("City's Response") [ECF No. 61]; the Plaintiffs' Reply in Support of their Motion for Summary Judgment ("Pltfs.' Reply") [ECF No. 67]; the Plaintiffs' Response to the City's Motion for Summary Judgment ("Pltfs.' Response") [ECF No. 63]; the City's Reply in Support of its Motion for Summary Judgment ("Def.'s Reply") [ECF No. 65].

## THE FACTS[3]

### A.   Certificates of Use

TK Enterprises and NAEH Media are businesses that operated out of a shared location in the City of Lauderhill from July 2019 until February 25, 2021. *See* JSUF ¶ 24. Hoping to protect the health and safety of its citizens, the City has made it unlawful for a business to operate within the City without *both* a Certificate of Use ("COU") and a local business tax receipt ("BTR"). *Id.* ¶ 23. The City has promulgated specific procedures for business to follow in seeking (and obtaining) the necessary COUs and BTRs. *Id.* ¶ 22. When a business submits its application for a COU, the City assigns the company a "business number" as a way of identifying and tracking that business through the City's systems. *Id.* ¶ 26. The Plaintiffs didn't review the City's Code of Ordinances, *either* before relocating to the City *or* before beginning their operations in the City, *id.* ¶ 21—even though (it's undisputed) "a business operating within a municipality is charged with knowing the requirements to operate within that particular municipality," Def.'s SOF ¶ 9; Pltfs.' SOF ¶ 9 ("Undisputed.").

### B.   TK Enterprises

On September 19, 2019, TK Enterprises submitted its COU application to the City. *See* JSUF ¶ 1. A week later, on September 25, 2019, City employee Kathy Collazo emailed TK Enterprises,

---

[3] "The facts are described in the light most favorable to the non-moving party." *Plott v. NCL Am., LLC*, 786 F. App'x 199, 201 (11th Cir. 2019); *see also Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) ("[F]or summary judgment purposes, our analysis must begin with a description of the facts in the light most favorable to the [non-movant]."). We accept these facts for summary-judgment purposes *only* and recognize that "[t]hey may not be the actual facts that could be established through live testimony at trial." *Snac Lite, LLC v. Nuts 'N More, LLC*, 2016 WL 6778268, at *1 n.1 (N.D. Ala. Nov. 16, 2016); *see also Cox Adm'r US Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion may not be the actual facts. They are, however, the facts for present purposes[.]" (cleaned up)). In considering the City's MSJ, then, we describe the facts in the light most favorable to the Plaintiffs—drawing mostly from the parties' Joint Statement of Undisputed Facts ("JSUF") [ECF No. 55] and from the Plaintiffs' Response Statement of Facts ("Pltfs.' Response SOF") [ECF No. 62]. We thus rely on the City's Statement of Facts ("Def.'s SOF") [ECF No. 56] *only* where the Plaintiffs have failed to genuinely dispute a proposition the City has asserted there. *See* S.D. FLA. L.R. 56.1(b)

identifying some deficiencies in the COU application and advising that "it is necessary to submit a complete application in order for it to be processed and submitted to the next stage of review." *Id.* ¶ 2. In her email, Collazo outlined the additional steps that would need to be followed before the company could get its COU. These included, among other things, having the company submit any missing information, getting the City to review and certify the application, waiting for the City to approve the application, waiting for the City to inspect the property, and (finally) having a City Economic Development Business Concierge deliver the business license to the business. Def.'s SOF ¶ 1; Pltfs.' Response SOF ¶ 1 ("Undisputed."). A few weeks later, on October 9, 2019, Collazo followed up with TK Enterprises via email so that the City could "further review [TK Enterprises'] application." JSUF ¶ 3. Collazo reached out again with an email on October 25, 2019, *id.* ¶ 4, by email and phone on November 1, 2019, *id.* ¶ 5, and by phone on January 3, 2020, *id.* ¶ 6; *see also* Def.'s SOF ¶ 3 ("The City requested further clarification as to COU application deficiencies on November 1, 2019, January 3, 2020, and April 22, 2020."); Pltfs.' SOF ¶ 3 ("Undisputed."). Finally, on January 3, 2020, TK Enterprises sent Collazo an email, asking her to be patient because, as TK Enterprises explained, the Department of Business and Professional Regulation ("DBPR") inspection—a prerequisite for a State of Florida catering license—hadn't yet occurred. JSUF ¶ 7. It's undisputed *both* that TK Enterprises needed this DBPR catering license to operate, *see* Def.'s SOF ¶ 4; Pltfs.' SOF ¶ 4 ("Undisputed."), *and* that it never got an active DBPR catering license for the address it was working from in the City, *see* JSUF ¶ 8. TK Enterprises also told Collazo that NAEH Media would be submitting its own COU application. *See id.* ¶ 7.

---

("All material facts set forth in the movant's statement filed and supported as required above will be deemed admitted unless controverted by the opposing party's statement provided that the Court finds that the movant's statement is supported by evidence in the record.").

4

C.  **NAEH Media**

On January 13, 2020, NAEH submitted its COU application. *See* JSUF ¶ 9. Three months later, on March 11, 2020, City employee Kenneth Lopez emailed NAEH, identifying several planning-and-zoning deficiencies he'd found in the COU application. *Id.* ¶ 10. Lopez emailed NAEH again on April 22, 2020—to follow up on those deficiencies and to tell NAEH that "revisions and clarifications" were necessary "in order to continue to process your application." *Id.* ¶ 11. NAEH never responded to these emails. *Id.* ¶ 12.

D.  **Notice and Closure**

Both TK Enterprises and NAEH were operating out of a property at 1451 Northwest 31st Avenue, Suite C, Lauderhill, Florida, as of February 24–25, 2021. *See* JSUF ¶ 13; *see also* Tang Depo. [ECF No. 56-3] at 10:22–25, 11:17–20. On February 24, 2021, Lauderhill Housing Authority Inspector Drumene Woodside posted a Closure of Business Notice on the Plaintiffs' property.[4] *Id.* ¶ 14. Woodside had searched for the Plaintiffs' businesses in the City's database and discovered that, while the Plaintiffs had *applied* for COUs, those applications were still pending. *Id.* ¶ 27. The Notice advised the Plaintiffs that their businesses were subject to closure for operating without a COU (and without a BTR), and it gave the Plaintiffs 24 hours to remedy those deficiencies. *Id.* ¶ 15. The next morning, February 25, 2021, the Plaintiffs called the City but didn't reach anyone. *Id.* ¶ 16. The Plaintiffs don't remember whether they left a voicemail. *Ibid.* The Plaintiffs' representative, Kenny Tang, then left the property to go to a food tasting in West Palm Beach. *Id.* ¶ 17. Later that same day, the City closed the Plaintiffs' businesses for operating without *either* a COU *or* a BTR. *Id.* ¶ 18.

Several times between February 25, 2021, and March 3, 2021, the Plaintiffs emailed the City in the hopes of fixing the COU-application deficiencies that had been outstanding since 2019 (for TK

---

[4] The Plaintiffs didn't own the property. They were renting it.

Enterprises) and 2020 (for NAEH). *Id.* ¶ 19. The Plaintiffs didn't, however, request an administrative hearing (or an appeal) before a special master. *Id.* ¶ 20.

      **E.**      **Status of the COUs**

Our narrative thus far has focused exclusively on facts that are undisputed. But the parties *disagree* about whether, in fact, the City ever issued COUs to TK Enterprises or NAEH. Starting with TK, the Plaintiffs insist that "TK Enterprises received a COU from Lauderhill on or about September 24, 2019." Pltfs.' Response SOF ¶¶ 2, 5, 6, 8, 10, 11, 12; Tang Decl. [ECF No. 62-3] ¶ 8 ("I do not recall if Kelly brought back to the office the COU [for TK Enterprises] or if the City mailed it to the office. The only thing I remembered is that I received a COU from the City on or about September 24, 2019."). The City, for its part, says: "As to the purported COU, the referenced document only lists a line item for 'processing fee.' An actual COU and business tax receipt would contain fee amounts to include business development fees and fire fees. A business that has a document that only lists 'processing fee' indicates the COU and business tax receipt process is incomplete." Def.'s Reply SOF ¶¶ 2, 5, 6, 10, 11, 12; Exemplar Business Tax Receipt [ECF No. 60-2]; Woodside Depo. [ECF No. 56-4] at 89:19–91:20.

As for NAEH, the Plaintiffs maintain that "Kenny Tang recall[s] receiving a COU for NAEH." Pltfs.' Response SOF ¶ 5; *see also* Tang Depo. at 45:5–9 ("Q: It's your position as you sit here today as the corporate representative of TK and NAEH that the City issued a COU to -- in the name of TK and NAEH each to operate within the City of Lauderhill at the subject location? A: Yes."); Tang Decl. ¶ 9 ("I also recall receiving the COU for NAEH, but I have not been able to locate the document (or the file in which the COU was placed) due to the relocations my businesses had to undergo."). The City parries that "Mr. Tang directly testified that from April 22, 2020 to the date of the City's closure of Plaintiffs' businesses on February 25, 2021, Plaintiffs never provided the City the clarifications it had requested on April 22, 2020 in order to move toward the issuance of the COUs. .

6

. . Finally, NAEH has provided no record evidence to support Mr. Tang's claim that he 'recall[s] receiving a COU for NAEH.'" Def.'s Reply SOF ¶ 5; Tang Depo. at 77:17–24 ("Q: It seems that, from these emails, that from April 22, 2020 to the date of the shutdown on February 25, 2021, you never provided the City the clarifications that they'd requested back on April 22, 2020 in order to move toward the issuance of the COUs. Is that accurate? A: Yes.").

The City's right that NAEH hasn't pointed to any record evidence to support Tang's claims, and we're mindful of the clear differences the City has identified between TK Enterprises' (alleged) COU and the exemplar COUs and BTRs the Plaintiffs have shown us. *Compare*, *e.g.*, Exemplar COUs [ECF Nos. 62-1] at 5 (listing sums paid for a "Business Development Fee" and for "annual fire commercial"), and *id.* at 7 (listing sums paid for a "Business Development Fee," for "annual fire commercial," and for "retail – NBRHD sales use"), *with* TK Oriental Fine Foods Purported COU [ECF No. 62-2] at 7 (listing only a sum paid as a "processing fee"). Still, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *MY. P.I.I. LLC v. H&R Marine Eng'g, Inc.*, 544 F. Supp. 3d 1334, 1344 (S.D. Fla. 2021) (Altman, J.) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)); *see also McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003) ("Issues of credibility and the weight afforded to certain evidence are determinations appropriately made by a finder of fact and not a court deciding summary judgment."). At this stage, "a litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment." *U.S. v. Stein*, 881 F.3d 853, 856–57 (11th Cir. 2018). In other words, "[a] non-conclusory affidavit," like Tang's Declaration, "can create a genuine dispute concerning an issue of material fact, even if it is self-serving and/or uncorroborated." *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 944 (11th Cir. 2021). So, for purposes of this opinion *only*, we'll assume that the Plaintiffs *have* created a

genuine dispute of material fact on the question of whether the City *in fact* issued them a COU and a BTR.

But that assumption cannot save our Plaintiffs here because they have failed to plead—much less show—that the City had a policy, pattern, or practice of violating the procedural due-process rights of businesses within its jurisdiction.

## THE LAW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In determining whether to grant summary judgment, the Court must consider "particular parts of materials in the records, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c). "By its very terms, [the summary judgment] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Id.* at 248. A dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *Ibid.* "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

At summary judgment, the moving party bears the initial burden of "showing the absence of a genuine issue as to any material fact." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying

8

those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."). Once the moving party satisfies its initial burden, the burden then shifts to the non-moving party to "come forward with specific facts showing there is a genuine issue for the trial." *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (cleaned up); *see also* FED. R. CIV. P. 56(e).

When ruling on a motion for summary judgment, the Court "need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3); *see also Green v. Northport*, 599 F. App'x 894, 895 (11th Cir. 2015) ("The district court could consider the record as a whole to determine the undisputed facts on summary judgment."); *HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 703 F. App'x 814, 817 (11th Cir. 2017) (noting that a "court may decide a motion for summary judgment without undertaking an independent search of the record" (quoting FED. R. CIV. P. 56 advisory committee's note to 2010 amendment)). In any event, the Court must "review the facts and all reasonable inferences in the light most favorable to the non-moving party." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001). "[A]ssessments of credibility—no less than the weighing of evidence—are fact questions not susceptible of disposition at summary judgment." *Obremski v. Armor Corr. Health Servs., Inc.*, 467 F. Supp. 3d 1265, 1275 (S.D. Fla. Apr. 7, 2020) (Altman, J.) (citing *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012)).

"[I]f there are any genuine issues of material fact, the Court must deny summary judgment and proceed to trial." *Torres v. Wal-Mart Stores E., LP*, 555 F. Supp. 3d 1276, 1282 (S.D. Fla. Aug. 17, 2021) (Altman, J.). The Court, on the other hand, must grant summary judgment if a party "has failed to make a sufficient showing on an essential element of [its] case." *Celotex*, 477 U.S. at 323; *see also Lima v. Fla. Dep't of Child. & Fams.*, 627 F. App'x 782, 785–86 (11th Cir. 2015) ("If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." (cleaned up)).

**ANALYSIS**

The City asks us to grant its MSJ for three reasons: (1) because the Plaintiffs failed to plead a viable *Monell* claim, *see* City's MSJ at 2–5; (2) because the Plaintiffs cannot establish a protected property interest, *see id.* at 5–8; and (3) because the Plaintiffs failed to exhaust post-deprivation remedies, *see id.* at 8–11. Because we agree with the City's first argument, we **GRANT** the MSJ without addressing the other two.

### A.  Municipal Liability Under § 1983

"[T]he Supreme Court has placed strict limitations on municipal liability under § 1983." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003). A municipality can be liable under § 1983 only when "the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). In other words, "[a] city 'cannot be held liable under § 1983 on a *respondeat superior* theory.'" *Rebalko v. City of Coral Springs*, 2020 WL 6446042, at *23 (S.D. Fla. Nov. 3, 2020) (Altman, J.) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Instead, "a plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997). "*Monell*, the Supreme Court has explained, is a case about responsibility, and is meant to limit the § 1983 liability to acts which the municipality has officially sanctioned or ordered." *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016) (cleaned up). Because "Section 1983 provides a fault-based analysis for imposing municipal liability," plaintiffs must establish "that the city was the person who caused them to be subjected to their deprivation." *Depew v. City of St. Mary's, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986). "A municipality 'causes' a violation where (1) it acts via 'an official policy enacted by its legislative body (e.g., an ordinance or resolution passed by a city council)'; (2) 'final policymakers have acquiesced in a longstanding practice that constitutes the entity's standard operating procedure'; or (3) 'on the basis of ratification when a subordinate public official makes an

10

unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority.'" *625 Fusion, LLC v. City of Fort Lauderdale*, 526 F. Supp. 3d 1253, 1260 (S.D. Fla. 2021) (Altman, J.) (quoting *Hoefling*, 811 F.3d at 1279).

### B.     The Plaintiffs' § 1983 Claim

The Complaint never alleges that the City caused the (purported) deprivation of the Plaintiffs' constitutional rights in *any* of the three ways the Eleventh Circuit outlined in *Hoefling*.

*First*, the Complaint never says that the City acted pursuant to "an official policy enacted by its legislative body (e.g., an ordinance or resolution passed by a city council)[.]" *Hoefling*, 811 F.3d at 1279. Perhaps recognizing this fatal omission, the Plaintiffs try to advance an official-policy claim in their Response. *See* Pltfs.' Response at 5 ("First, Lauderhill argues Plaintiffs did not allege that 'the City promulgated an official unconstitutional code enforcement policy.' However, Plaintiffs did allege Lauderhill developed an enhanced code enforcement procedure, which included a 24-hour notice, to address revenue decreases during the COVID-19 pandemic." (cleaned up)); *see also ibid.* (referring to "a custom or policy that constituted deliberate indifference to Plaintiff's [sic] constitutional rights"). The problem, of course, is that *the Complaint* includes no such allegations.[5] The Complaint, in fact, never includes the central assertion the Plaintiffs push in their Response—*viz.*, that the City acted pursuant to "a custom or policy that constituted deliberate indifference to Plaintiff's [sic] constitutional rights[.]" *Ibid.* And (it probably goes without saying) the Complaint simply never mentions "an official

---

[5] And the law is well-settled that a plaintiff may not amend his complaint through his summary-judgment response. *See Ganstine v. Sec'y, Fla. Dept. of Corr.*, 502 F. App'x 905, 909–10 (11th Cir. 2012) ("A plaintiff may not, however, 'amend' his complaint at the summary judgment stage by raising a new claim."); *see also Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) ("The sole basis for entitlement to FMLA leave pled in Hurlbert's interference claim was *his* alleged serious health condition. Thus, the subsequent assertion of an additional, separate statutory basis for entitlement to leave (caring for a *parent's* serious health condition) effects a fundamental change in the nature of Hurlbert's interference claim. Having proceeded through discovery without amending (or seeking to amend) his complaint to reflect that fundamental change, Hurlbert was not entitled to raise it in the midst of summary judgment.").

policy enacted by [the City's] legislative body (e.g., an ordinance or resolution passed by a city council)"—as *Hoefling* unambiguously requires for this first type of *Monell* claim. *See Hoefling*, 811 F.3d at 1279; *see also* Compl. (failing to allege that the City acted pursuant to an unconstitutional ordinance, resolution, or other legislative action). On the contrary, the Complaint alleges *precisely the opposite*—that, for instance, "Lauderhill *failed to adhere to* . . . the notice and hearing procedures outlined in Chapter 12 of the City of Lauderhill, Florida, Code of Ordinances," Compl. ¶ 17 (emphasis added); that "Lauderhill *did not provide* Plaintiffs with at least ten (10) days written notice before the closure of the businesses," which (the Plaintiffs say) is required "pursuant to Section 12-3(c)(1)," *id.* ¶ 18 (emphasis added); and that "Lauderhill *failed to provide* Plaintiffs with . . . an opportunity to request a Section 12-7 due process hearing," which, the Plaintiffs maintain, is mandated by "Section 12-33(d)," *id.* ¶ 19. At best, in other words, the Plaintiffs allege only that the City *violated* its own official policies—not that it acted "*via* 'an official policy enacted by its legislative body[.]'" *625 Fusion, LLC*, 526 F. Supp. 3d at 1260 (quoting *Hoefling*, 811 F.3d at 1279). That's plainly insufficient to satisfy the first avenue to *Monell* liability under *Hoefling*.

*Second*, the Complaint never alleges "a longstanding practice that constitutes the entity's standard operating procedure[.]" *Hoefling*, 811 F.3d at 1279. "To establish a policy or custom, it is generally necessary to *show* a persistent and wide-spread practice." *Depew*, 787 F.2d at 1499 (emphasis added). In other words, a § 1983 plaintiff proceeding under *Hoefling*'s second prong must allege—and, at summary judgment, must adduce evidence of—"other incidents involving factual situations that are substantially similar to the case at hand." *Mercado v. City of Orlando*, 407 F.3d 1152, 1161–62 (11th Cir. 2005) (affirming dismissal of a *Monell* claim where the plaintiff "could not point to any other incidents involving similar facts"). Our Plaintiffs, as the City points out, "do *not* allege . . . that the City has engaged in a widespread practice of unconstitutionally enforcing its Code." City's MSJ at 4; *see generally* Compl. (failing to allege any similar incidents involving other businesses). Instead, the Plaintiffs

12

identify *only* one (potentially) unconstitutional incident: the City's (alleged) violation of *the Plaintiffs'* procedural due-process rights "by removing and excluding *Plaintiffs* from the companies' office space and business property without providing notice and an opportunity to be heard." Compl. ¶ 27 (emphasis added). So, while the Complaint arguably presents an isolated constitutional violation against the Plaintiffs *themselves*, "[n]ormally[,] random acts or isolated incidents are insufficient to establish a custom or policy." *Depew*, 787 F.2d at 1499; *see also Cannon v. Macon Cnty.*, 1 F.3d 1558, 1565 (11th Cir. 1993) ("Cannon's first amended complaint alleges facts supporting her contention that she was arrested in violation of Alabama law and in violation of her due process rights. It fails, however, to allege any facts whatsoever to indicate that the alleged violation was a result of County policy or practice that would give rise to County liability. The district properly granted the County's motion to dismiss."). Because the Plaintiffs haven't alleged any facts to suggest that the closure of their businesses was "part of a widespread practice rather than an isolated event," they've failed to plead an unconstitutional practice (or custom) under *Monell*. *Rosario v. Miami-Dade Cnty.*, 490 F. Supp. 2d 1213, 1225 (S.D. Fla. 2007) (Ungaro, J.) (dismissing a *Monell* claim where "[the] Plaintiffs allege that Rosario was deprived of adequate medical care, but they have not alleged any facts capable of supporting a finding that the County's and/or the Public Health Trust's actions or omissions with regard to Rosario's medical care were part of a widespread practice rather than an isolated event").

*Third*, the Plaintiffs cannot proceed under *either* a final-policymaker theory *or* a ratification theory for the simple reason that the Complaint (and the MSJ briefing) *never* reference either a "subordinate public official" who made "an unconstitutional decision" or ratification of that decision "by someone who does have final policymaking authority." *Hoefling*, 811 F.3d at 1279. The Plaintiffs thus fail to satisfy all three of *Hoefling*'s prongs.

Against all this, the Plaintiffs advance two arguments—both unavailing. *First*, they insist that "a reasonable evaluation of the Complaint demonstrates it contains sufficient factual allegations to

13

satisfy *Monell* pleading standards." Pltfs.' Response at 2–3. But, one sentence later, the Plaintiffs show just what they mean: "Specifically," they contend, "[the] Plaintiffs in this case request this Court to hold Lauderhill liable under Section 1983 *for the actions of its employees and agents*." *Id.* at 3 (emphasis added). Of course, that's precisely the problem, because "a governmental entity isn't liable under § 1983 for the actions of its employees." *Dixon v. Epiq Corp. Restructuring, LLC*, 2022 WL 2290523, at *9 (S.D. Fla. June 24, 2022) (Altman, J.) (citing *Monell*, 436 U.S. at 694). We thus cannot—and will not— hold the City liable "for the actions of its employees and agents." Pltfs.' Response at 3.

*Second*, the Plaintiffs point to a handful of allegations that (they maintain) plausibly allege "a custom or policy that constituted deliberate indifference to Plaintiff's [sic] constitutional rights." Pltfs.' Response at 5 (citing Compl. ¶¶ 10–12, 17–20, 27). But we've reviewed those allegations carefully and conclude that they do no such thing.

We'll start with paragraphs 10–12, which (in the Plaintiffs' view) allege that "Lauderhill adopted an enhanced code enforcement posture to address decreasing revenues due to the COVID-19 pandemic." *Ibid.* And we generally agree with that characterization. Here's what those paragraphs say:

> The COVID-19 lockdown, quarantine and related measures, which were used by state and local governments to minimize the spread of the pandemic, resulted in a significant decrease in the revenue that local governments received from taxes, fees, fines and other revenue-producing measures.
>
> One way that some cities planned to raise revenue (rather than primarily to protect residents) on an expedited basis during the pandemic was to enforce code enforcement ordinances.
>
> In or around February 2021, Lauderhill blanketed the municipality with notices threatening business closures if certificates of use (and associated fees paid) were not updated and local business taxes were not paid by the offending commercial operations.

Compl. ¶¶ 10–12.

Paragraphs 10 and 11 don't actually allege any conduct by the City at all. Paragraph 12, of course, *does* claim that the City "blanketed the municipality with notices threatening business closures," but it (notably) *doesn't* allege any *unconstitutional* conduct.[6] And the City's decision to ramp up code-enforcement efforts—even if those efforts are aimed at raising revenue—doesn't, standing alone, violate the Constitution. *See Brucker v. City of Doraville*, 38 F.4th 876, 887 (11th Cir. 2022) ("The plaintiffs also allege Doraville's police have a financial interest in issuing tickets. . . . We cannot say that the City's budgetary reliance on fines and fees means the police have an improper interest in over-enforcing the law.").

Next, the Plaintiffs allege that, "in its rush to increase revenue, Lauderhill failed to adhere to, or advise Plaintiffs of, the notice and hearing procedures outlined in Chapter 12 of the City of Lauderhill, Florida, Code of Ordinances." Compl. ¶ 17. But, as we've said, "random acts or isolated incidents are insufficient to establish a custom or policy." *Depew*, 787 F.2d at 1499. Without similar allegations about *other* businesses—and, at this stage of the case, some *proof* that the City violated the due-process rights of *other* businesses—this assertion fails to support a viable *Monell* claim. *See, e.g.*, *Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998) (setting aside a jury verdict for the plaintiff and reversing the district court's denial of summary judgment for the defendant where the plaintiff "admits that he presented no evidence of prior constitutional violations or false arrests involving Florida's disorderly conduct statute"). Indeed, in the next three paragraphs (18–20), the Complaint makes clear that this allegation from paragraph 17 applies *only* to the City's behavior towards the

---

[6] There's nothing inherently unconstitutional about a state (or its municipality) enforcing a duly-enacted ordinance. *See, e.g.*, *Duro v. Reina*, 495 U.S. 676, 685 (1990) ("A basic attribute of full territorial sovereignty is the power to enforce laws against all who come within the sovereign's territory, whether citizens or aliens."), *superseded by statute on other grounds*, 25 U.S.C. § 1301(2); *cf.* THE FEDERALIST NO. 45 (James Madison) ("[The powers] which are to remain in the State Governments are numerous and indefinite. . . . The powers reserved to the several States will extend to all the objects, which, in the ordinary course of affairs, concern the lives, liberties and properties of the people; and the internal order, improvement, and prosperity of the State.").

15

Plaintiffs. *See* Compl. ¶ 18 ("*For example*, pursuant to Section 12-3(c)(1), Lauderhill did not provide *Plaintiffs* with at least ten (10) days written notice before the closure of the businesses[.]" (emphases added)); *id.* ¶ 19 ("Further, according to Section 12-33(d), Lauderhill failed to provide *Plaintiffs* with a ten-day notice and an opportunity to request a Section 12-7 due process hearing[.]" (emphasis added)); *id.* ¶ 20 ("Finally, Lauderhill failed to provide *Plaintiffs* with notice of the companies' right to seek a due process hearing under Section 12-7(c)[.]" (emphasis added)). And, again, allegations about the isolated violation of the *Plaintiffs'* rights cannot sustain a plausible *Monell* claim against the City.

Finally, the Plaintiffs direct our attention to Paragraph 27, which reads as follows:

> Starting on February 25, 2021, and continuing to the present, Lauderhill violated, and continues to violate, Plaintiffs' federal due process rights by removing and excluding Plaintiffs from the companies' office space and business property without providing notice and an opportunity to be heard as explicitly required by Sections 12-3(c)(1), 12-33(d), and 12-7(c) of the City of Lauderhill, Florida, Code of Ordinances and implicitly demanded by the Fourteenth Amendment to the United States Constitution.

*Id.* ¶ 27. Here again, however, the allegation is expressly limited to the City's (purported) violation of the *Plaintiffs'* constitutional rights.

To summarize, then: The Plaintiffs allege that, in an effort to raise revenue, the City blanketed businesses with closure notices. *Id.* ¶ 12. Nothing illegal about that. The Plaintiffs also claim that the City "remov[ed] and exclud[ed] Plaintiffs from the companies' office space and business property without providing notice and an opportunity to be heard[.]" *Id.* ¶ 27. That *might* be illegal, but (even if it is) it's the only (read: isolated) example of illegal conduct the Complaint identifies. The point is this: The two central contentions the Plaintiffs have highlighted for us here—some conduct that could, in the abstract, form a "persistent and wide-spread practice," *Depew*, 787 F.2d at 1499, and (separately) a "random act[] or isolated incident[]," *ibid.*—don't combine to create a plausible *Monell* claim because the Plaintiffs totally failed *either* to (1) allege that the blanketing of businesses with closure notices was

16

in any way unconstitutional *or* (2) identify "other [illegal] incidents involving factual situations that are substantially similar to the case at hand." *Mercado*, 407 F.3d at 1161–62.

One more thing: In the Plaintiffs' MSJ—but not in their Response to the City's MSJ—the Plaintiffs advance a (potentially) compelling argument that appears nowhere in their Complaint. "In this case," they say, "the record evidence shows municipal liability attaches to Lauderhill since the 24-hour notice practice, which has been implemented by Code Enforcement for at least 18 years, is deemed to be the actual municipal law applicable to the closure of businesses that allegedly do not possess a Certificate of Use." Pltfs.' MSJ at 14. In support of this contention, the Plaintiffs point to the Deposition of April Skinner, the City's Chief of Code Enforcement, who agreed that, while § 12-3(c)(1) requires "[no] less than 10 days written notice," her department has been issuing 24-hour notices "since [Skinner's] been working for the City of Lauderhill," which is "close to 18 years." Skinner Dep. [ECF No. 58-5] at 65:25–66:6 ("Q: So, Ms. Skinner, after reading Section 12-3, Subsection C-1, what does the ordinance – well, how long – or what type of notice is supposed to be provided to a person that does not secure a Certificate of Use or a business tax? A: After reading this? [No] less than 10 days written notice."); *id.* at 66:22–67:1 ("Q: Do you know how long Code Enforcement has been issuing 24-hour notices when a business has failed to secure a Certificate of Use? A: Since I've been working for the City of Lauderhill."); *id.* at 67:2–3 ("Q: So that's been like close to 18 years? A: Yes.").

Two problems with this. *One*, the law is clear that, when faced with cross-motions for summary judgment, we assess each motion separately—drawing, as to *each motion*, all reasonable inferences in favor of the non-movant. *See Houston Specialty Ins. Co. v. Fenstersheib*, 2022 WL 4880148, at *1 n.5 (S.D. Fla. Sept. 30, 2022) (Altman, J.) ("In adjudicating cross-motions, we consider each motion separately and, of course, resolve all reasonable inferences against the movant." (citing *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005)). To survive the City's MSJ, therefore, the Plaintiffs

17

had an independent obligation to rebut the City's arguments with *some* proof. *See, e.g.*, *RLI Ins. Co. v. Alfonso*, 2021 WL 430720, at *7 (S.D. Fla. Feb. 8, 2021) (Altman, J.) ("Once the moving party satisfies its initial burden, the burden then shifts to the non-moving party to come forward with specific facts showing there is a genuine issue for trial." (cleaned up)); *A&E Adventures LLC v. Intercard, Inc.*, 529 F. Supp. 3d 1333, 1337, 1351 (S.D. Fla. 2021) (Altman, J.) ("[T]o survive summary judgment, the plaintiff must adduce some evidence of damages—something concrete with which a reasonable jury can do more than guess at a 'mere conclusion' from the 'highest level of abstraction.'" (quoting *Anderson v. Am. Family Ins. Co.*, 800 F. App'x 814, 816 (11th Cir. 2020)); *see also* FED. R. CIV. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials[.]"). By failing to advance this argument (or adduce this proof) in response to the City's MSJ, in short, the Plaintiffs have forfeited any such argument. *See United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court sua sponte [only] in extraordinary circumstances."); *Sappupo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue [forfeits] it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented . . . are deemed [forfeited].").

*Two*, as we've indicated, even if the Plaintiffs had advanced these arguments in response to the City's MSJ, we would've disregarded them because a party cannot use its summary-judgment briefing to amend its complaint. *See Ganstine v. Sec'y, Fla. Dept. of Corr.*, 502 F. App'x 905, 909–10 (11th Cir.

18

2012) ("A plaintiff may not, however, 'amend' his complaint at the summary judgment stage by raising a new claim."); *see also Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) ("The sole basis for entitlement to FMLA leave pled in Hurlbert's interference claim was *his* alleged serious health condition. Thus, the subsequent assertion of an additional, separate statutory basis for entitlement to leave (caring for a *parent's* serious health condition) effects a fundamental change in the nature of Hurlbert's interference claim. Having proceeded through discovery without amending (or seeking to amend) his complaint to reflect that fundamental change, Hurlbert was not entitled to raise it in the midst of summary judgment."). Again, as we've said, this argument—and the citation to Skinner's deposition—appears nowhere in the Complaint.

We therefore **GRANT** the City's MSJ as to Count I.

### C.     The State-Law Claim

Having now disposed of the only federal claim in this case, we decline to exercise supplemental jurisdiction over the remaining state-law claim. *See Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial."); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("In general, if all federal claims are eliminated before trial, the pendent state claims should be dismissed."); *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999) (reiterating that the Eleventh Circuit "has noted that 'if the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of state claims'" (quoting *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984))).

We, therefore, **DISMISS** Count II.

### CONCLUSION

After careful review, we hereby **ORDER AND ADJUDGE** as follows:

1. The City's MSJ [ECF No. 57] is **GRANTED** as to Count I. The City's MSJ is **DENIED as moot** as to Count II, because we decline to exercise supplemental jurisdiction over that claim.

2. Count II is **DISMISSED**.

3. The Plaintiffs' MSJ [ECF No. 59] is **DENIED as moot**.

   **DONE AND ORDERED** in the Southern District of Florida on February 27, 2023.

   _____
   **ROY K. ALTMAN**
   **UNITED STATES DISTRICT JUDGE**

cc:    counsel of record